UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

VICKIE L. RAMSEY,

        Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

17-CV-110
DECISION & ORDER

---

On February 6, 2017, the plaintiff, Vickie Ramsey, brought this action under the

Social Security Act ("the Act"). She seeks review of the determination by the

Commissioner of Social Security ("Commissioner") that she was not disabled. Docket

Item 1. On November 22, 2017, Ramsey moved for judgment on the pleadings, Docket

Item 14, and on February 21, 2018, the Commissioner responded and cross-moved for

judgment on the pleadings, Docket Item 17.

For the reasons stated below, this Court denies Ramsey's motion and grants the

Commissioner's cross-motion.

## BACKGROUND

### I.    PROCEDURAL HISTORY

On December 29, 2012, Ramsey applied for Supplemental Security Income

benefits. Docket Item 7 at 14. She claimed that she had been disabled since March 5,

2012, due to bipolar disorder, anti-social behavior, limited ability to move her neck and

back, degenerative disc disease, arthritis, and insomnia. *Id.* at 169.

On June 21, 2013, Ramsey received notice that her application was denied because she was not disabled under the Act. *Id.* at 104. She requested a hearing before an administrative law judge ("ALJ"), *id.* at 110, which was held on March 23, 2015, *id.* at 14. The ALJ then issued a decision on May 26, 2015, confirming the finding that Ramsey was not disabled. *Id.* at 28. Ramsey appealed the ALJ's decision, but her appeal was denied, and the decision then became final. *Id.* at 4.

## II.      RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Ramsey's objection. Ramsey was examined by several different providers but seven—David Bagnall, M.D.; Luis Berrios, N.P.; Peter McKenna, P.A.; Hongbiao Liu, M.D.; Cynthia McPhaden, L.M.H.C.; Sarah Conboy, P.M.H.N.P.; and Susan Santarpia, Ph.D.—are of most significance to the claim of disability here.

### A.      David Bagnall, M.D.

David Bagnall, M.D., is a specialist in spine and musculoskeletal medicine who examined Ramsey on October 11, 2013. Docket Item 7 at 274. Dr. Bagnall diagnosed a rotator cuff tear, cervical spondylosis without myelopathy, lumbosacral spondylosis without myelopathy, and radicular syndrome in both upper and lower limbs. *Id.* at 276.

### B.      Luis Berrios, N.P.

Ramsey saw Luis Berrios, N.P., on March 11, 2015, for an annual physical exam. Docket Item 7 at 447. On March 17, 2015, Nurse Practitioner Berrios completed a medical source statement, *id.* at 440, opining that Ramsey could frequently lift twenty pounds; could stand and walk for a total of four hours, and sit for a total of two hours,

during a work day; and could sit for fifteen minutes and stand or walk for thirty minutes

at a time. *Id.* at 437-38. N.P. Berrios also noted various other limitations that resulted

from Ramsey's impairment, such as her ability to occasionally crouch or push and pull.

*Id.* at 439. He suggested various environmental restrictions but stated that Ramsey

needed functional capacity testing as to those limitations. *Id.* at 439-40.

To support these opinions, N.P. Berrios directed the reader to refer to his notes.

*Id.* But those treatment notes do not mention the length of time Ramsey could sit or

stand, specific movements, or environmental hazards about which Mr. Berrios opined.

*Id.* at 445-47.

The ALJ gave "very little weight" to N.P. Berrios's opinion both because a nurse

practitioner is not an "acceptable medical source" and because N.P. Berrios's notes did

not reflect the severe limitations in his opinion. *Id.* at 22. The ALJ also questioned the

certainty of his opinion because of his statement that further testing was needed. *Id.*

### C.    Peter McKenna, P.A.

Peter McKenna, P.A., saw Ramsey several times, including on July 24, 2013,

August 21, 2013, September 10, 2013, October 15, 2013, and February 25, 2014. *Id.* at

443-44; 451-59. On February 25, 2014, Physician's Assistant McKenna completed a

medical examination for employability assessment for the New York State Office of

Temporary and Disability Assistance. *Id.* at 441-42. He opined that Ramsey was very

limited in walking, lifting, carrying, pushing, bending, pulling, and climbing and was

moderately limited in standing. *Id.* at 442. He also opined that Ramsey had certain

other moderate limitations, such as maintaining attention and concentration or

appropriate social behavior, but that she was not limited in understanding,

remembering, and carrying out instructions or making simple decisions.  *Id.*

The ALJ gave "little weight" to P.A. McKenna's opinion for three reasons.  First,

the opinion was prepared for a New York state program, not the Social Security

Administration, and the ALJ found it unclear what "moderately limited" or "very limited"

meant in that context.  *Id.* at 25.  Second, the ALJ found that the record contained no

evidence supporting limitations in walking or maintaining attention and concentration.

*Id.*  Finally, P.A. McKenna did not reference any examination or exam findings to

support his opinion.  *Id.*

### D.  Hongbiao Liu, M.D.

Hongbiao Liu, M.D., is a nuclear medicine physician who saw Ramsey for a

consultative examination on June 13, 2013.  *Id.* at 262.  Dr. Liu opined that Ramsey had

"mild to moderate limitation for prolonged walking, bending, kneeling, and overhead

reaching."  *Id.* at 264.  Dr. Liu also opined that Ramsey should avoid dust and other

irritants, heights, and heavy machinery operations.  *Id.*

The ALJ gave Dr. Liu's opinion "some weight" because, despite being the result

of one brief examination, the examination findings were largely consistent with

Ramsey's other medical records and the record as a whole.  *Id.* at 23.

### E.  Cynthia McPhaden, L.M.H.C., and Sarah Conboy, P.M.H.N.P.

Cynthia McPhaden, L.M.H.C., and Sarah Conboy, P.M.H.N.P., are two mental

health professionals who repeatedly saw Ramsey for psychotherapy sessions between

December 31, 2013, and January 23, 2015.  *Id.* at 293-390.  In these sessions, Ms.

McPhaden and Ms. Conboy worked with Ramsey on dealing with depression, anger,

isolation, periods of panic, and self-isolation.  *Id.*  These providers consistently assigned

Ramsey a Global Assessment of Function ("GAF") score of 56, indicating moderate

symptoms.  *Id.*  The ALJ gave those GAF assessments "some weight" because they are

subjective, one-time assessments of the patient's general functioning.  *Id.* at 24.

### F.     Susan Santarpia, Ph.D.

Susan Santarpia, Ph.D., is a psychologist who saw Ramsey for a consultative

psychiatric evaluation on May 9, 2013.  *Id.* at 256.  Dr. Santarpia listed limited

socialization with friends, bowling, hiking, and camping as Ramsey's "mode of living."

*Id.* at 258.  She opined that Ramsey had "[m]ild to moderate impairment . . . in

performing complex tasks independently" and "making appropriate decisions."  *Id.*  The

ALJ gave "little weight" to Dr. Santarpia's opinion because "[h]er examination [was] not

consistent with her own findings" or those of Ms. Conboy or Ms. McPhaden.  *Id.* at 24.

## III.    THE ALJ'S DECISION

In denying Ramsey's application, the ALJ evaluated Ramsey's claim under the

Social Security Administration's five-step evaluation process for disability

determinations.  *See* 20 C.F.R. § 404.1520.  At the first step, the ALJ must determine

whether the claimant is currently engaged in substantial gainful employment.

§ 404.1520(a)(4)(i).  If so, the claimant is not disabled.  *Id.*  If not, the ALJ proceeds to

step two.  § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe

impairments.  § 404.1520(a)(4)(ii).  If there are no severe impairments, the claimant is

not disabled.  *Id.*  If there are any severe impairments, the ALJ proceeds to step three.

§ 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any of the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If a claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that a claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

At step one, the ALJ determined that Ramsey had not engaged in any substantial gainful activity since her alleged disability onset date. Docket Item 7 at 16. At step two,

6

the ALJ found several severe impairments, including multiple disc herniations in her

neck with radiculopathy, asthma, minor motor seizures, shoulder impairment,

depressive disorder, and anxiety disorder.  *Id.*  Then, at step three, the ALJ determined

that none of these severe impairments met or medically equaled any of the listings in 20

C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*

At step four, the ALJ found that Ramsey had the

> residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant can occasionally climb ramps and stairs, and can occasionally balance.  The claimant cannot kneel, crouch, crawl, or climb ladders, ropes or scaffolds. The claimant must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respirator irritants. The claimant must avoid extreme cold, heat, wetness, or humidity.  The clamant [sic] cannot work around hazards such as unprotected heights or moving mechanical parts. The claimant cannot reach overhead.  The claimant can engage in frequent handling. The claimant can have frequent interaction with supervisors and co-workers, and occasional interaction with the general public.

*Id.* at 18-19.  Finally, at step five, the ALJ determined that a significant number of jobs

exist in the national economy that Ramsey could perform with her RFC, such as

administrative clerk or bank teller.  *Id.* at 27.

## LEGAL STANDARDS

### I.  DISTRICT COURT REVIEW

When evaluating a decision by the Commissioner, district courts have a narrow

scope of review: they are to determine whether the Commissioner's conclusions are

supported by substantial evidence in the record and whether the Commissioner applied

the appropriate legal standards.  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).

Indeed, a district court **must** accept the Commissioner's findings of fact if they are

supported by substantial evidence in the record.  42 U.S.C. § 405(g).  Substantial

evidence is more than a scintilla and includes "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d

108, 112 (2d Cir. 2009). In other words, a district court does not review a disability

determination de novo. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

## DISCUSSION

### I.    ALLEGATIONS

Ramsey objects to the ALJ's determination at step three that she did not meet

the requirements of section 1.04, Disorders of the Spine. Docket Item 14-1 at 15. She

specifically argues that the ALJ erred at step three by addressing the incorrect factors

under medical listing 1.04. *Id.* at 15. The ALJ based that finding on the fact that

Ramsey had "not shown evidence of nerve root compression, spinal arachnoiditis, or

lumbar spinal stenosis which resulted in the ability to ambulate effectively, as defined in

1.00B2b." Docket Item 7 at 17.

Ramsey also argues that the ALJ erred by substituting his own lay judgment for

the medical judgment of physicians in determining her RFC. *Id.* at 20.

### II.    ANALYSIS

#### A.  Medical Listing 1.04

A claimant is disabled if her impairments meet or medically equal one of the

specific requirements of a medical listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.

20 C.F.R. § 404.1520(a)(4)(iii). One of those listings is "1.04 Disorders of the spine."[1]

---

[1] The full text of this listing is:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal
arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet

The ALJ considered whether Ramsey's severe impairments met this listing and determined that they did not "because the claimant has not shown evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis which resulted in the ability to ambulate effectively, as defined in 1.00B2d." Docket Item 7 at 17.

Ramsey argues that the ALJ erred by applying the incorrect criteria under listing 1.04A and simply concluding that Ramsey's cervical spinal injury does not meet that listing. Docket Item 14-1 at 18. But the ALJ did not address the incorrect criteria for listing 1.04A. In fact, the ALJ considered each subsection—1.04A, 1.04B, and 1.04C—individually, Docket Item 7 at 17, as he was required to do because those subsections are disjunctive. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ's treatment

---

arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpart P, Appendix 1.

of each subsection was not erroneously conclusory, either. The ALJ explicitly noted

that Ramsey had not presented the evidence of her condition required by each

subsection: evidence of "nerve root compression" for 1.04A; "spinal arachnoiditis" for

1.04B; or "lumbar spinal stenosis" for 1.04C. Docket Item 7 at 17; *see id.* Ramsey's

argument confuses the requirements of listing 1.04 as a whole with the specific

requirements of listing 1.04A, but the ALJ clearly addressed both. In sum, the ALJ

appropriately considered the necessary elements of listing 1.04—including the specific

elements of subsections A, B, and C—and Ramsey's argument that he failed to

consider listing 1.04A is inapposite.[2]

The Court is not persuaded by Ramsey's argument that the record evidence

met the criteria in listing 1.04A and therefore required the ALJ to find her disabled. The

record may include evidence of some listing 1.04A criteria, but "an impairment that

manifests only some of those criteria [for a listing considered at step three], no matter

how severely, does not qualify." *Ryan v. Astrue*, 5 F.Supp.3d 493, 507 (S.D.N.Y.)

(*quoting Sullivan v. Zebley*, 493 U.S. 521, 531 (1990), *superseded by statute on other*

*grounds as stated in Colon v. Apfel*, 133 F.Supp.2d 330, 338–39 (S.D.N.Y.2001)).

Here, the Commissioner correctly argues that the record does not evidence the

"compromise of a nerve root . . . or the spinal cord." And "compromise of a nerve root

---

[2] To the extent Ramsey argues that the ALJ was required to be more specific with regard to listing 1.04A, that argument also fails because without "evidence of nerve root compression" and "compromise of a nerve root . . . or the spinal cord"—regardless of the "neuro-anatomic distribution of pain," "limitation of motion," or "motor loss" that "characterize[]" it—the claimant cannot meet the listing. 20 C.F.R. Part 404, Subpart P, Appendix 1.

or the spinal cord is a threshold requirement for finding an impairment under Listing

1.04." *Morris v. Astrue*, 2009 WL 399447, at *5 (E.D. Tenn. Feb. 18, 2009).

Ramsey argues that she met her burden to show compromise of a nerve root or

spinal cord with two MRIs showing an "indent" or "impinging" on the spinal cord.[3]

Docket Item 14-1 at 18; Docket Item 7 at 230, 232. But that ipse dixit does not change

the fact that none of Ramsey's physicians noted that her impairments compromised a

nerve root or her spinal cord. Docket Item 17-1 at 19. On the contrary, Dr. Bagnall, a

spinal specialist, diagnosed Ramsey with cervical and lumbosacral spondylosis *without*

myelopathy.[4] Indeed, if the plaintiff is correct and her symptoms meet the 1.04A

criteria, then anyone with a ruptured or "slipped" disc is automatically disabled.

The claimant bears the burden to show that her impairments meet or medically

equal listing 1.04A, and the ALJ's duty is to resolve conflicts in the evidence such as

these. Holding the claimant to her burden is especially necessary at step three because

finding in favor of the claimant at that step "operate[s] as a presumption of disability that

makes further inquiry unnecessary." *Sullivan*, 493 U.S. at 532-33. Therefore, "[w]hile

the ALJ might have been more specific in detailing the reasons for concluding that

[Ramsey's] condition did not satisfy a listed impairment, the referenced medical

evidence, together with the lack of compelling contradictory evidence from the plaintiff,"

---

[3] Both of these MRIs were conducted before Ramsey's alleged disability onset date in March, 2012.

[4] Myelopathy is an injury to the spinal cord due to severe compression that may result from trauma, congenital stenosis, degenerative disease or disc herniation. When any portion of the spinal cord becomes compressed or constricted, the resulting symptoms are known as myelopathy. *See Johns Hopkins Medicine,* MYELOPATHY, https://www.hopkinsmedicine.org/health/conditions-and-diseases/myelopathy (last visited Apr. 9, 2019).

demonstrate that the ALJ's decision was based on substantial evidence.  *Otts v.*

*Comm'r of Soc. Sec.*, 249 Fed.Appx. 887, 889 (2d Cir. 2007) (summary order); 42

U.S.C. § 405(g).

Ramsey also argues that the ALJ erred by misstating that listing 1.04 includes a

finding of lumbar spinal stenosis that "resulted in the ***ability*** [should be ***inability***] to

ambulate effectively."  *Compare* Docket Item 14-1 at 18 (emphasis added) *with* 1.04C

("Lumbar spinal stenosis . . . resulting in ***inability*** to ambulate effectively . . . .").  While

Ramsey correctly identified the ALJ's technical error, that error is harmless because it

does not prevent the reviewing court from following the ALJ's reasoning.  *See Taylor v.*

*Berryhill*, 697 Fed. Appx. 661, 663 n.1 (10th Cir. 2017) ("the ALJ's incorrect date is a

harmless mistake.  Common sense, not technical perfection, is the guide of a reviewing

court.") (internal quotations omitted); *Aung Winn v. Colvin*, 541 Fed. App. 67, 70 (2d Cir.

2013) (the ALJ must "conduct a distinct analysis that would permit adequate review on

appeal.") (quoting *Kohler v. Astrue*, 546 F.3d 260 (2d Cir. 2008)) (summary order).

Here, the ALJ's mistake was clearly just that—a mistake in the word used.  There is no

doubt the ALJ understood that in order to meet listing 1.04C, the spinal stenosis must

result in the ***inability*** to ambulate, not the ***ability*** to ambulate.  So the ALJ's

misstatement about lumbar spinal stenosis resulting in "ability to ambulate" does not

provide any reason to revisit the ALJ's decision.

## B.  RFC Determination

When determining a plaintiff's RFC, the ALJ must evaluate every medical opinion

in the record.  20 C.F.R. § 416.927(c).  But "only 'acceptable medical sources' can be

considered treating sources . . . whose medical opinions may be entitled to controlling

weight. 'Acceptable medical sources' are further defined (by regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (citing 20 C.F.R. § 416.913(a) and SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2009)). Thus, while the ALJ must consider the opinions of "other sources"—for example, nurse practitioners—there is no obligation to assign weight or give deference to those sources. *Id.*

Nevertheless, the ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03P, at *6. When there is conflicting evidence in the claimant's record, "[t]he consistency of the opinion with the other evidence in the record is a proper factor for an ALJ to consider when weighing an opinion from an 'other source.'" *Id.* at *4 (citing 20 C.F.R. § 404.1527(d) and § 416.927(d)).

Here, the ALJ adequately addressed the opinions from "other sources" and appropriately explained the reasons for the weight he assigned them. The ALJ explained that he gave N.P. Berrios's opinion "very little weight" because N.P. Berrios referred to his notes to support the severe limitations about which he opined, but those notes "do not reflect the limitations that he opined" and "poorly support his opinions." Docket Item 7 at 22. The ALJ also noted that N.P. Berrios indicated that the environmental restrictions about which he opined still needed further evaluation. *Id.* The ALJ assigned little weight to P.A. McKenna's opinion because its terminology was unclear, the record did not include any objective medical evidence to support the

13

limitations about which P.A. McKenna opined, and P.A. McKenna did not refer to any examination or exam findings to support his assessments. *Id.* at 25. Even though Ms. McPhaden and Ms. Conboy did not provide a formal medical source statement on Ramsey's mental limitations, the ALJ assigned some weight to the GAF scores assessed by them. *Id.* at 24. And for each of these "other source" opinions, the ALJ explained the weight he gave to them well enough for a reviewer to follow his reasoning. *See* SSR 06-03P, at *6.

The ALJ also appropriately explained the weight given to opinions from "acceptable medical sources." The ALJ must consider several factors when deciding the weight to give a medical opinion, including the extent and nature of the treatment relationship, the length of the treatment relationship, whether the medical opinion is supported by medical signs and laboratory findings, the opinion's consistency with the record as a whole, the opinion source's specialization, and other factors the claimant brings to the ALJ's attention. 20 C.F.R. § 404.1527(c)(1)-(6). Here, the ALJ gave Dr. Liu's opinion "some weight" because "her examination findings are largely consistent with the record" and "[t]he limitations ascribed . . . are consistent" as well. Docket Item 7 at 23. He also discussed the fact that although Dr. Liu "is not a treating source and only met the claimant once," the examination appears to have been "thorough." *Id.* Likewise the ALJ noted that Dr. Santarpia was not a "treating source" and explained that he assigned her opinion "little weight" because "[h]er examination is not consistent with her own findings" or with the findings of other treatment providers. *Id.* at 24-25.

Ramsey also argues the ALJ rejected all the medical source opinions in a way that "create[d] a gap in the record and trigger[ed] the ALJ's duty to develop the record."

Docket Item 14-1 at 25.  But the ALJ did not reject all medical source opinions.  As just

noted, for example, the ALJ gave some weight to Dr. Liu's medical source statement

regarding physical limitations.  And for both Ramsey's physical and mental limitations,

"the record contains sufficient evidence from which an ALJ can assess the claimant's

residual functional capacity [such that] a medical source statement or formal medical

opinion is not necessarily required."  *Monroe v. Comm'r of Soc. Sec.*, 676 Fed. Appx. 5

at *8 (2d Cir. 2017) (summary order) citing *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed.

Appx. 29, 34 (2d Cir. 2013) (summary order)); *see Pellam v. Astrue*, 508 Fed. Appx. 87,

90 (2d Cir. 2013) (upholding ALJ's RFC determination where he "rejected" physician's

opinion but relied on physician's findings and treatment notes) (summary order).

Indeed, the record here includes more than a scintilla of evidence from which the

ALJ could conclude that Ramsey could perform light work with the further limitations in

her RFC.  She went camping for long periods in the summer, Docket Item 7 at 337, and

went out to eat, *id.* at 392.  She sought unemployment benefits after her alleged onset

date, *id.* at 164, and therefore held herself out as able to work.  The record also

contains numerous treatment notes that quantify Ramsey's physical limitations, *see,

e.g., id.* at 275, as well as numerous treatment notes from psychotherapy sessions

describing her mental status, *see, e.g., id.* at 294.  In fact, that was the very evidence

that led the ALJ to assign little weight to the opinions that were inconsistent with them.

*See Monroe v. Comm'r of Soc. Sec.*, 676 Fed. Appx. 5 (2d Cir. 2017) ("[T]he ALJ's

decision not to give controlling weight to [treating physician] was proper considering the

substantial evidence contradicting [the physician's] assessment.  . . . [H]is treatment

notes contradicted his RFC assessment.").

Finally, Ramsey's case is not one in which the record includes no medical opinions at all. *See Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996) ("an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person.") (internal citation omitted). Here, the ALJ discussed each of the medical opinions pertaining to Ramsey's physical and mental impairments. Docket Item 7 at 22-26. And even though the ALJ did not expressly assign a particular weight to the opinions in their treatment notes, Ms. McPhaden's and Ms. Conboy's opinions support the ALJ's RFC assessment. For example, Ms. McPhaden described Ramsey as having "appropriate" judgment and knowledge and being "able to reach thought goals . . . void of hallucinations, suicidal/homicidal ideations, paranoias or delusion," among other things. *Id.* at 299. And the ALJ specifically referred to these notes from Ms. McPhaden and Ms. Conboy. *Id*. at 23-24. In other words, medical opinions pertaining to Ramsey's physical and mental impairments were "incorporated into the ALJ's RFC assessment" even though the ALJ found that substantial evidence did not warrant assigning any particular medical source opinion great weight. *Dougherty-Noteboom*, 2018 WL 3866671, at *9 (W.D.N.Y. Aug. 15, 2018).

In sum, by discounting medical opinions that were inconsistent with other objective evidence, the ALJ did not create a gap in the record. He simply weighed the available evidence—as he should have. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

## **CONCLUSION**

The ALJ's decision was neither contrary to the substantial evidence in the record, nor did it result from any legal error. Therefore, for the reasons stated above, Ramsey's motion for judgment on the pleadings is DENIED, the Commissioner's cross-motion for judgment on the pleadings is GRANTED, the complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated:     April _10_, 2019
            Buffalo, New York


                                    _s/ Lawrence J. Vilardo_
                                    LAWRENCE J. VILARDO
                                    UNITED STATES DISTRICT JUDGE